UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAPITAL DUDE, LLC,

                                    Plaintiff,

                                                                    1:21-cv-0507
v.                                                                  (GTS/DJS)

DENVER GLASS, INC., and TODD J. ASHBY,

                                    Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

KAMINSKI LAW, PLLC                                  SHANNA M. KAMINSKI, ESQ.
  Counsel for Plaintiff
40950 Woodward Ave., Suite 100
Bloomfield Hills, MI 48304

GLENN T. SUDDABY, Chief United States District Judge

<u>**DECISION and ORDER**</u>

Currently before the Court, in this breach-of-contract action filed by Capital Dude, LLC,

("Plaintiff") against Denver Glass, Inc., and Todd J. Ashby (collectively, "Defendants"), is

Plaintiff's motion for default judgment against Defendants pursuant to Fed. R. Civ. P. 55(b).

(Dkt. Nos. 9, 11.)[1] For the reasons set forth below, Plaintiff's motion is granted as to liability,

and denied without prejudice as to damages.

**I.      RELEVANT BACKGROUND**

        **A.  Plaintiff's Complaint and Relevant Procedural History**

_____

[1]      In response to a Text Order issued by the Court about a service of process issue, Plaintiff
refiled its motion for default judgment on July 12, 2022. (Dkt. No. 11.) With the exception of
Plaintiff's request for damages, which the Court addresses in a later portion of this Decision &
Order, the motions are the same. (Dkt. Nos. 9, 11.) Accordingly, the Court cites to Dkt. No. 9
throughout the Decision and Order, but the Decision and Order applies to both filings

On April 30, 2021, Plaintiff filed its Complaint in this action. (Dkt. No. 1.) Liberally construed, Plaintiff's Complaint asserts four claims: (1) a breach-of-contract claim against Defendant Denver Glass for breach of an agreement it executed in July 2020 (the "July Agreement"); (2) a breach-of-contract claim against Defendant Ashby for breach of a guaranty he executed in July 2020 (the "July Guaranty"); (3) a breach-of-contract claim against Defendant Denver Glass for breach of an agreement it executed in September 2020 (the "September Agreement"); and (4) a breach-of-contract claim against Defendant Ashby for breach of a guaranty he executed in September 2020 (the "September Guaranty"). (Dkt. No. 1.)

On June 15, 2021, Plaintiff filed a request for entry of default against Defendants; and, on June 17, 2021, the Clerk of Court entered default against Defendants on all claims pursuant to Fed. R. Civ. P. 55(a). (Dkt. Nos. 6-7.) On October 4, 2021, Plaintiff filed its motion for default judgment against Defendants. (Dkt. No. 9.)

B.  Parties' Briefing on Plaintiff's Motion

Generally, in support of its motion for default judgment, Plaintiff sets forth the following four factual assertions: (1) Defendants are not infants, incompetent persons, or in the military service; (2) Plaintiff properly served Defendants under Fed. R. Civ. P. 4 through personal service on May 12 and 13, 2021; (3) Defendants have defaulted in this action by failing to plead or otherwise defend, and the Clerk of Court entered its default; (4) Plaintiff seeks damages for the alleged breach of each contract. (Dkt. No. 9.)

Defendants have not responded to Plaintiff's motion, and the deadline by which to do so has expired. (*See generally* Docket Sheet.)

I.    RELEVANT LEGAL STANDARD

A.  Standard Governing a Motion for Default Judgment

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." *Robertson v. Doe*, 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008). "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" *Robertson*, 2008 WL 2519894, at *3 (quoting Fed. R. Civ. P. 55[a]).[2] "Second, pursuant to Rule 55(b)(2), the party seeking default judgment is required to present its application for entry of judgment to the court." *Id.*[3] In its motion for default judgment, "the moving party must '1) show that the defendant was properly served with a summons and complaint; 2) obtain the entry of default; and 3) provide an affidavit setting forth the salient facts including, if the defendant is a person, showing that he or she is not an infant or incompetent, or a member of the United States Military Service.'" *Sloan v. Transunion, LLC,* 21-CV-0769, 2022 WL 2237639, at *2 (N.D.N.Y. June 16, 2022) (D'Agostino, J.) (citing Fed. R. Civ. P. 55(b); N.D.N.Y. L.R. 55.1, 55.2). "When an action presents more than one claim for relief . . ., the court may direct entry of a final judgment as to

---

[2]    Under N.D.N.Y. L.R. 55.2(a), when requesting an entry of default judgment from the Clerk of the Court, the moving party must submit (a) the Clerk's certificate of entry of default, (b) a statement showing the principal amount due (not to exceed the amount demanded in the Complaint and giving credit for any payments with the dates of payments), (c) a computation of the interest to the day of judgment, (d) a per diem rate of interest, (e) the costs and taxable disbursements claimed, and (f) an affidavit of the moving party or the party's attorney. N.D.N.Y. L.R. 55.2(a). The appended affidavit must show that (a) the party against whom judgment is sought is not an infant or incompetent person, (b) the party against whom judgment is sought is not in military service, (c) the party against whom judgment is sought has defaulted in appearance in the action, (d) service was properly effected under Fed. R. Civ. P. 4, (e) the amount shown in the statement is justly due and owing and that no part has been paid except as set forth in the party's other statement, and (f) disbursements sought to be taxed have been made in the action or will necessarily be made or incurred. *Id.*

[3]    Under N.D.N.Y. L.R. 55.2(b), when moving for an entry of default judgment from the Court, the moving party must submit (a) the Clerk's certificate of entry of default, (b) a proposed form of default judgment, (c) a copy of the pleading to which no response has been made, and (d) an affidavit of the moving party or its attorney setting forth the facts required by N.D.N.Y. L.R. 55.2(a). N.D.N.Y. L.R. 55.2(b).

one or more, but fewer than all, claims or parties . . . if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).

Pursuant to Second Circuit law, when determining whether to grant a default judgment, the Court must consider three factors: (1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "An unexcused or unexplained failure to provide an answer to the Complaint will itself demonstrate willfulness," as does failing to respond to both a complaint and a subsequent motion for default judgment. *U.S. v. Silverman*, 15-CV-0022, 2017 WL 745732, at *3 (E.D.N.Y. Feb. 3, 2017) (citing *S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998)); *Indymac Bank v. Nat'l Settlement Agency, Inc.*, 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007).

When a court considers a motion for default judgment, it must "accept[] as true all of the factual allegations of the complaint . . . ."  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted).  "However, the court cannot construe the damages alleged in the complaint as true."  *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds, et al. v. Catone Constr. Co., Inc.*, 08-CV-1048, 2009 WL 4730700, at *2 (N.D.N.Y. Dec 4, 2009) (Scullin, J.) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citations omitted)).  "Rather, the court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'"  *Eng'rs Joint Welfare, Pension, Supplemental, Unemployment Benefit and Training Funds*, 2009 WL 4730700, at *2 (quoting *Alcantara*, 183 F.3d at 155 (citation omitted)).  This inquiry "involves two tasks: [1]

determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's evidence supporting the damages to be determined under this rule." *Alcantara*, 183 F.3d at 155. Finally, in calculating damages, the court "need not agree that the alleged facts constitute a valid cause of action . . . ." *Au Bon Pain*, 653 F.2d at 65 (citation omitted).

The Court notes that, although a hearing to fix the amount of damages may be conducted,[4] "a hearing is not necessary when the court relies 'upon detailed affidavits and documentary evidence, supplemented by the District Judge's personal knowledge of the record,' to calculate a damage award." *Fabian v. Bukowksi*, 16-CV-0878, 2017 WL 4876296, at *2 (N.D.N.Y. Oct. 30, 2017) (Kahn, J.) (quoting *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993)); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991) (concluding that, where district judge was "inundated with affidavits, evidence, and oral presentations," a full evidentiary hearing was not necessary); *Chavez v. L2 Liu Inc.*, 20-CV-1388, 2021 WL 1146561, at *6 (E.D.N.Y. Feb. 26, 2021) ("The Court . . . does not need to hold a hearing, as detailed affidavits and documentary evidence may be sufficient.") (internal quotation marks omitted). After evaluating Plaintiff's motion for default judgment and corresponding affidavit, the Court is satisfied it possesses the evidence necessary to determine an award of damages.

I.   ANALYSIS

   A.  Whether the Court Should Grant Plaintiff's Motion for Default Judgment as to Defendants' Liability

   After carefully considering Plaintiff's unopposed motion, the Court is satisfied that, under the circumstances, Plaintiff has met its modest threshold burden of establishing entitlement to default judgment against Defendants on the issue of liability.

---

[4]      Fed. R. Civ. P. 55(b).

As an initial matter, the Court finds that Defendants' default was willful based on their failure to either answer Plaintiff's Complaint or file any response to its motion for default judgment. *Silverman*, 2017 WL 745732, at *3 (citing *McNulty*, 137 F.3d at 738-39; *Indymac Bank*, 2007 WL 4468652, at *1). The Court notes that, according to the declaration of Plaintiff's counsel and the affidavits of service, Plaintiff served copies of the Summons and Complaint on Defendant Ashby and Defendant Denver Glass through personal service on May 12 and 13, 2021. (Dkt. Nos. 4-5, 9.) Plaintiff's counsel also confirmed in her declaration submitted with the motion for default judgment that Defendants are not infants or incompetent persons, and that they are not in the military service. (Dkt. No. 9, at 3.) Based on the information provided, the Court finds that Defendants were provided with the requisite notice of the action against them but have failed to answer either the Complaint or the motion for default judgment and have not appeared to provide an explanation for the default. The Court therefore finds that the available evidence is sufficient to indicate that Defendants' default is willful.

Further, as discussed above in Part II.A. of this Decision and Order, the Court must accept the factual allegations in Plaintiff's Complaint as true when assessing whether it has established Defendants' liability on its motion for default judgment. However, that does not mean that a finding of liability is automatic. Rather, "prior to entering default judgment, a district court is 'required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law.'" *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)); *Van Limburg Stirum v. Whalen*, 90-CV-1279, 1993 WL 241464, at *4 (N.D.N.Y. June 29, 1993) (Munson, J.) ("Before judgment can be entered, the court must determine whether plaintiff's factual allegations are sufficient to state a claim for relief on each of the causes of action for

which the plaintiff seeks judgment by default."). "In so doing, the court may exercise its discretion to 'require some proof of the facts that must be established in order to determine liability.'" *Van Limburg Stirum*, 1993 WL 241464, at *4 (quoting 10 C. Wright, A. Miller, & M. Kane, *Federal Prac. & Proc.* § 2688).

Here, Plaintiff asserts breach-of-contract claims against both Defendants based on their alleged defaults of the July Agreement, September Agreement, July Guaranty, and September Guaranty. (Dkt. No. 1.) Under New York law, Plaintiff must establish the following four elements to support its breach of contract claims: "'(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages.'" *Habitzreuther v. Cornell Univ.*, 14-CV-1229, 2015 WL 5023719, at *5 (N.D.N.Y. Aug. 25, 2015) (Sharpe, J.) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)). "New York follows the common law rule that, in interpreting a contract, the intent of the parties governs, and therefore, a contract should be construed so as to give full meaning and effect to all of its provisions." *PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1199 (2d Cir. 1996) (citation and internal quotation marks omitted). "Under New York law[,] the initial interpretation of a contract is a matter of law for the court to decide" and "[i]ncluded in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir. 1998) (internal quotation marks and citation omitted).

Plaintiff's Complaint contains sufficiently plead allegations entitling it to relief on its breach-of-contract claims against Defendants. *RE/MAX, LLC v. Robert Goodman Realty, LLC*, 17-CV-0526, 2018 WL 3031845, at *4 (N.D.N.Y. June 19, 2018) (Suddaby, C.J.). More

specifically, Plaintiff asserts that it entered into the July Agreement and September Agreement

with Defendant Denver Glass on or about July 8, 2020, and September 22, 2020, and that

Defendant Ashby executed the July Guaranty and September Guaranty on or about the same

dates. (Dkt. No. 1, at ¶¶ 7-8, 20-21; Dkt. No. 1-1, at 2; Dkt. No. 1-3, at 2.) Under the July

Agreement, Plaintiff purchased $189,000 in "future receipts,"[5] and would obtain those Receipts

by debiting $5,250 each week from a designated bank account (the "Designated Account") into

which Defendant Denver Glass would deposit the Receipts until Plaintiff received the full

amount purchased.[6] (Dkt. No. 1, at ¶¶ 7, 11; Dkt. No. 1-1, at 2, 17.) Plaintiff fulfilled its

obligations under the Agreement by wiring $140,000 to purchase the Receipts. (Dkt. No. 1, at ¶

10; Dkt. No. 1-1, at 2.)  However, on January 4, 2021, Plaintiff received notice that it could not

debit the $5,250 for the week of December 30, 2021, due to insufficient funds in the Designated

Account. (Dkt. No. 1, at ¶ 12; Dkt. No. 1-1, at 2.) Defendants did not provide notice of the

Designated Account's insufficient funds, which is an event of default pursuant to the July

Agreement.[7] (Dkt. No. 1, at ¶¶ 12-13; Dkt. No. 1-1, at 7.) Even after Plaintiff agreed to debit

only $1,000 for a period of time after the default, Defendants again defaulted on February 11,

---

[5]     Both Agreements define "future receipts" as "all payments made in cash or by check,
ACH or other electronic transfer, credit card, debit card, bank card, charge card (each such card
shall be referred to, collectively, as a "Payment Card") or other form of monetary payment in the
ordinary course of Seller's business." (Dkt. No. 1-1, at 2; Dkt. No. 1-2, at 2.)

[6]     The Agreement originally provided that Plaintiff would debit a "Daily Amount" of
$1,050.00. (Dkt. No. 1-1, at 2.) However, in an addendum to the Agreement executed on the
same day, the parties agreed that the Agreement was "modified and amended to reflect that,
instead of paying the Daily amount, Seller shall pay to Buyer a Weekly Amount, which shall
mean $5,250.00 . . . ." (*Id.* at 17.)

[7]     (Dkt. No. 1-1, at 7 [listing "Events of Default" in paragraph 16, including when the
"Seller fails to provide timely notice to Buyer such than in any given calendar month there is one
ACH transaction attempted by the Buyer that is rejected by Seller's bank for insufficient
funds"].)

2021, by having insufficient funds in the Designated Account, not notifying Plaintiff of the Designated Account's insufficient funds, and leaving Plaintiff unable to debit funds from that Designated Account thereafter. (Dkt. No. 1, at ¶¶ 13-16; Dkt. No. 1-1, at 13.)

Likewise, under the September Agreement, Plaintiff purchased $28,000 in Receipts and wired $20,000 (as required for its performance under the September Agreement) to Defendant Denver Glass in expectation of debiting $175 each weekday from the Designated Account. (Dkt. No. 1, at ¶¶ 20, 23-24; Dkt. No. 1-2, at 2.) Plaintiff later learned that it could not debit the $175 for December 29, 2021, because Defendant Denver Glass intentionally blocked the debit. (Dkt. No. 1, at ¶ 25.) Defendant Denver Glass's interference with Plaintiff's right to collect the $175 is an event of default under the September Agreement.[8] (Dkt. No. 1, at ¶¶ 26-27; Dkt. No. 1-2, at 7.)

With respect to Defendant Ashby, the July Guaranty and September Guaranty required "unconditionally guaranteed prompt and complete performance of all the obligations, representations, warranties and covenants made by Defendant Denver Glass in the Agreements."[9] (Dkt. No. 1, at ¶¶ 8, 21; Dkt. No. 1-1, at 13; Dkt. No. 1-2, at 13.) Both the July Guaranty and September Guaranty state that, in the event of a default of the respective Agreements, "Buyer may seek recovery from Guarantor(s) for all of Buyer's losses and damages, including, without limitation, by enforcement of Buyer's rights under this Personal

---

[8]      (Dkt. No. 1-2, at 7 [listing "Events of Default" in paragraph 16, including when the "Seller interferes with Buyer's right to collect the Daily Amount"].)

[9]      "As an inducement to Buyer to purchase the Future Receipts identified in the Agreement, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Guarantor(s) irrevocably, absolutely, and unconditionally guarantee(s) to Buyer, Seller's good faith and truthfulness, and Seller's prompt and complete performance of all the obligations, representations, warranties and covenants made by Seller in the Agreement, as each may be renewed, amended, extended, or otherwise modified in accordance with the Agreement." (Dkt. No. 1-1, at 13; Dkt. No. 1-2, at 13.)

Guaranty of Performance without first seeking payment from Seller or any other guarantor, or any other guaranty. . . ." (Dkt. No. 1-1, at 13; Dkt. No. 1-2, at 13.) The Guaranties also provided that the monetary recourse was "in addition to all fees on Appendix 1 of the Agreement which Buyer may seek from Guarantor(s) too, as well as reasonable attorney's fees and costs associated with any lawsuit and/or collection arising out of, or related to, the Agreement." (*Id.*)

Based on these facts, the Court is satisfied that Defendants breached their contracts with Plaintiff, and that Plaintiff suffered damages as a result. The Court therefore grants Plaintiff's motion for default judgment as to liability.

### B. Whether the Court Should Grant Plaintiff's Motion for Default Judgment as to Damages

After carefully considering Plaintiff's unopposed motion, the Court is not satisfied that Plaintiff has met its burden of providing the requisite support for the damages it seeks in its motion for default judgment.

More specifically, the Court finds that Plaintiff has not provided the requisite support for its entitlement to the amount of principal it seeks in its motion for default judgment. Plaintiff contends it is owed $60,000 in principal on the July Agreement, as well as $2,900 in fees. (Dkt. No. 1, at ¶¶ 17-18.) Likewise, Plaintiff contends it is owed $16,810 in principal on the September Agreement, with $5,900 in fees. (*Id.*, at ¶¶ 27-28.) However, outside of these figures listed in its unverified Complaint (and restated in the motion for default judgment), Plaintiff provides no affidavits from individuals with personal knowledge of the alleged damages or other supporting documentation in support of these amounts.

Even if the Court relied solely on the Agreements in an attempt to determine how Plaintiff arrives at these amounts, the Complaint omits factual information that would allow the Court to do so. For example, Plaintiff states that after the first default on the July Agreement,

10

Plaintiff "agreed to debit $1,000" for a period of time until the second default on February 11, 2021. (Dkt. No. 1, at ¶¶ 14-15.) The Court is uncertain, however, *when* Plaintiff agreed to debit $1,000 (rather than $5,250), meaning it cannot determine how many weeks Plaintiff received $1,000 between January 4, 2021 (i.e., the date Plaintiff learned of the first default), and February 11, 2021 (i.e., the date of the second default). Likewise, Plaintiff merely cites to Appendix 1 in the Agreements as support for the fees it requests from the Court, but it does not identify which of the nine types of fees listed in Appendix 1 that it believes constitute the total amount of fees it seeks for the breach of each Agreement. (Dkt. No. 1, at ¶¶ 18, 28; Dkt. No. 1-1, at 12; Dkt. No. 1-2, at 12.)

Further, when Plaintiff refiled its motion for default judgment on July 12, 2022 (in response to its receipt of the Court's Text Order requesting additional information from Plaintiff regarding service of process), it failed to request attorneys' fees and changed the amount of its requested statutory pre-judgment interest. (Dkt. Nos. 9, 11.) The Court accordingly cannot determine whether Plaintiff intends to waive its request for attorneys' fees listed in its original motion and is likewise uncertain if Plaintiff intended to change the amount of statutory prejudgment interest it requested.

Based on these facts, the Court cannot "conduct an inquiry [into Plaintiff's requested damages] to ascertain the amount . . . *with reasonable certainty.*" *Eng'rs Joint Welfare, Pension, Supplemental, Unemployment Benefit and Training Funds*, 2009 WL 4730700, at *2 (internal quotation marks omitted and emphasis added). The Court accordingly denies Plaintiff's request for damages without prejudice.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for default judgment (Dkt. Nos. 9, 11) is **GRANTED** with respect to the liability of both Defendants and **DENIED without prejudice** with respect to damages.

Date:   August 4, 2022
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge